IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDMOND GRISHAM,<br><br>    Defendant. | CRIMINAL ACTION NO.<br><br>1:17-cr-208-MHC-CMS |

## **REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Edmond Grisham's Motion to Suppress Identification in which he seeks to exclude from evidence an eyewitness identification made from a six-photo array. [Doc. 74]. On April 16, 2021, I held an evidentiary hearing. [Doc. 132 ("Tr.")]. In his post-hearing brief, Grisham argues that the identification should be suppressed because (1) the array did not include enough "heavy-set" people; and (2) there was no testimony offered at the hearing to show that the witness actually viewed all six pictures that were presented to him.

### I.     **Facts Presented at the Evidentiary Hearing**

On December 25, 2016, the Intown Market convenience store in Atlanta, Georgia was robbed, and Atlanta Police Department Sergeant Michael Buckley was the lead investigator for the robbery. [Tr. at 9]. Sergeant Buckley testified

that two days after the robbery, a local television station aired a story about the robbery, and the next day, a DeKalb County detective contacted him. [*Id.* at 16]. The detective stated that they had a suspect in custody (Grisham) for "almost two dozen" DeKalb County robberies, and the detective said that Grisham was "most likely" the Intown Market robber. [*Id.*].

There had been an eyewitness to the Intown Market robbery, the cashier on duty at the time of the robbery, Mr. Njie, who had told police that the perpetrator was a heavy-set Black male who wore black clothing. [Tr. at 13, 15–16]. Sergeant Buckley testified that on January 10, 2017, he assembled a lineup array of six photographs of potential suspects, including Grisham, to show to Mr. Njie. [*Id.* at 9–12]. A copy of the array was introduced into evidence and marked as Government Exhibit 1. [*Id.* at 9–11; Doc. 133-1 ("Ex. 1")]. Sergeant Buckley testified that he did not select the photos based on Mr. Njie's description of the perpetrator (heavy-set Black male); rather, he selected the photos based on Grisham being the suspect and Grisham's pertinent characteristics. [Tr. at 9–10, 16–17].

The photos that Sergeant Buckley selected for the array were sourced from the DeKalb County Jail booking photos. [Tr. at 10]. The individuals in the pictures are all Black men of roughly the same age with similar build, ethnicity,

and facial hair. [*Id.* at 9–10; Ex. 1]. The photos themselves are very consistent in that they are all of the same size and clarity; they were taken at the same facility; and they all show a man wearing a black smock, like the ones used in barbershops, to cover their clothing. [*Id.*]. In Sergeant Buckley's opinion, the quality of DeKalb County Jail booking photos is very good, and he testified that he uses DeKalb County Jail booking photos any time he can when making photo lineups. [Tr. at 10]. Sergeant Buckley testified that he printed each of the six photos on separate pieces of paper and placed each of the photos in its own manila folder. [*Id.* at 11]. The photos were not numbered. [*Id.* at 19].

Atlanta Police Department Detective Willie Towns was tasked with presenting the six-photo lineup array to Mr. Njie. [Tr. at 12, 21]. Detective Towns testified that he was not involved in the investigation, and he did not know who the person of interest was. [*Id.* at 21, 32]. On January 10, 2017, Detective Towns met with Mr. Njie at the convenience store where Mr. Njie worked. [*Id.* at 21]. Before presenting the photos, Detective Towns read "verbatim" an admonition form to Mr. Njie, and he used an audio recorder to record the oral admonition. [*Id.* at 22–23]. The form, titled "Photo Line-Up Admonition," was introduced into evidence and marked as Government Exhibit 2. [*Id.* at 27; Doc. 133-2 ("Ex. 2")]. Mr. Njie signed the admonition form, indicating that he understood the instructions. [*Id.* at

23–24; Ex. 2]. Detective Towns then shuffled the folders, presented them to Mr. Njie, and stepped away in order to make Mr. Njie feel comfortable. [Tr. at 22–24, 28, 30]. Detective Towns testified that he was not sure if Mr. Njie in fact opened all six folders or viewed all six photos. [*Id.* at 37–38].

After a few minutes, Mr. Njie indicated that he had finished reviewing the photo lineup, and he stated that he had selected one of the photos who he believed to be the perpetrator. [Tr. at 24–26]. Detective Towns instructed him to "print, sign and date" the photo, which he did. [*Id.* at 26; Doc. 133-1 at 1]. Mr. Njie also wrote "9/10" on the photo which, according to Detective Towns, reflected Mr. Njie's certainty level—nine out of ten. [Tr. at 31–32]. Mr. Njie also signed the bottom part of the admonition form, indicating: (1) that he had "viewed a group of six photographs"; and (2) that he had identified a photograph as being the person who committed the robbery. [Ex. 2].[1] Detective Towns testified that he did not know whether Mr. Njie had selected the person of interest, and he did not discuss Mr. Njie's selection with him. [Tr. at 32].

---

[1] There is a space on the form for the witness to indicate the number of the photo that they selected. Here, Mr. Njie placed his initials in that space, rather than a number. [Ex. 2; Tr. at 33]. Sergeant Buckley testified that in this case, the photos were not numbered. He testified that he does not number the photographs ("so that way I can avoid coming to court for things like this"), and Detective Towns testified that normally, they put a slash in that blank for "N/A." [Tr. at 19, 33].

It turned out that the person shown in the photo that Mr. Njie selected was Grisham. [Tr. at 13].

## II. Discussion

Pretrial identifications may violate a defendant's constitutional due process rights when "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The Eleventh Circuit uses a two-step analysis to assess the admissibility of a pretrial identification. *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001) (citing *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988)). The first step is to determine whether the identification procedure used was unduly suggestive. *Id.* It is the defendant's burden to make this showing. *Albert v. Montgomery*, 732 F.2d 865, 871 (11th Cir. 1984). If the defendant cannot satisfy this burden, the inquiry ends. *Diaz*, 248 F.3d at 1102; *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987); *Albert*, 732 F.2d at 871 (holding that in order for the defendant to show that his constitutional rights were violated by an out-of-court identification, he must convince the court that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification). If, on the other hand, the court determines that the procedure was unnecessarily

suggestive, the court then proceeds to the second step to consider whether, under the totality of the circumstances, the identification is reliable, despite the suggestive nature of the procedure. *Diaz*, 248 F.3d at 1102 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972); *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (11th Cir. 1986)).

In deciding the step-one issue—i.e., whether the identification procedure was unnecessarily suggestive—the Supreme Court instructs that district courts evaluate a variety of factors, including the number of photographs shown to the witness, the nature of the photographs shown to the witness, and the police officer's conduct when presenting the photographs:

> [The risk of misidentification is] increased if the police display to the witness only the picture of a single individual who generally resembles the person [the witness] saw, or if they show [the witness] the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime.

*Simmons*, 390 U.S. at 383 (internal footnotes omitted).

In this case, Grisham makes two step-one arguments: (1) that the array was unnecessarily suggestive because his picture was the only one that met the witness's description of a "heavy-set Black male"; and (2) that the procedure was suggestive because the officer who presented the pictures to the witness did not

6

know whether the witness viewed all of the pictures before making his selection. [Doc. 145 at 6–8]. I will address them in turn.[2]

**A.    *Photo Array***

Courts consider several factors when assessing whether a photo array is unduly suggestive. The factors include the size of the photographs and background as well as the similarity of the physical features of those depicted, their apparent race, and other potentially identifying features. *See, e.g.*, *United States v. Anderson*, 156 F. App'x 218, 220–21 (11th Cir. 2005) (finding no clear error when the district court admitted an identification from a twenty-six person photo array despite the fact that the defendant claimed he was the only man pictured with short dreadlocks, several of the pictures showed men significantly older than the defendant, and the men depicted did not have uniform skin color, focusing on the fact that the photos were roughly the same size with similar backgrounds, each person depicted appeared to be African-American, and the font under each photo was uniform).

---

[2] Grisham also makes arguments about the reliability of the identification. [Doc. 145 at 8–12]. Because I conclude that Grisham has not carried his burden of showing that the identification process was unnecessarily suggestive, the Court need not address issues of reliability.

7

With respect to the characteristics of the photos here, they were all remarkably similar, having been selected from the same source, the DeKalb County Jail booking photos. The pictures were identical in size, background, and lighting. And the array was comprised of six pictures, which is a sufficient number given the uniformity of the photos' size, background, and lighting. *See United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994).

Moreover, the characteristics of the people depicted in the photos were also similar; each was male and of a similar age, build, ethnicity, and general physical appearance. None of the individuals was wearing distinctive clothing, and in fact, all wore black smocks for the photo. While each of the men have slightly different-shaped faces (some more slim than others), it is not possible to tell which ones might be "heavy-set" because of the black smock covering everything from the neck down. The fact that Grisham arguably has the fullest, roundest face of those depicted does not, in and of itself, render the array impermissibly suggestive. His picture does not stand out from the other photographs in such a way that it suggested Grisham was more than likely the culprit. *See United States v. Perkins*, No. 1:10-cr-97-JEC-LTW, 2011 WL 2294163, at *6 (N.D. Ga. Apr. 21, 2011), *report and recommendation adopted*, No. 1:10-cr-97-01-JEC, 2011 WL 2268055

(N.D. Ga. June 8, 2011), *aff'd*, 787 F.3d 1329 (11th Cir. 2015); *United States v. Knight*, 382 F. App'x 905, 907 (11th Cir. 2010).

Because the photos themselves are very similar, if not identical, in size, lighting, and background, and because the individuals depicted in the photos were of a similar age, build, ethnicity, and general physical appearance, the array is not suggestive, and the identification should not be suppressed.

### B. *The Procedure*

Grisham next contends that the identification procedure was unduly suggestive because Detective Towns does not know whether Mr. Njie looked at all six photos. [Doc. 145 at 7–8]. Grisham cites to law addressing single-photo identifications and claims that in the absence of evidence that the witness reviewed each of the six pictures, the procedure is impermissibly suggestive. [*Id.*]. Grisham argues that "the evidentiary hearing should be reopened to allow Mr. Grisham to call Mr. Njie to testify as to whether he looked at more than one photograph, which goes both to suggestiveness and to the reliability of his identification." [*Id.* at 8]. I disagree.

The danger of unduly suggestive identification procedures is that law enforcement may somehow suggest to a witness who they should select as a suspect or imply to a witness that a person is a suspect in the matter. Here, there is

9

no evidence that Detective Towns did anything like that. On the contrary, the evidence showed that Detective Towns specifically admonished Mr. Njie that the array "may or may not" have included a photo of the person involved in the crime. [Ex. 2]. The unnumbered photos were placed in separate manila envelopes and were presented to the witness in a random order by an officer who was not involved in the investigation. Mr. Njie was admonished regarding the procedure, and he signed the form indicating that he understood the admonishments. Detective Towns gave Mr. Njie privacy and as much time as he needed to review the array. After several minutes, Mr. Njie called Detective Towns over and indicated that he had selected one. Moreover, although Mr. Njie did not testify at the hearing, he signed the admonition form, stating, among other things, that he had "viewed a group of six photographs." [Ex. 2]. There was no evidence presented that would support Grisham's assertion that Mr. Njie might have reviewed only one photo or that the procedure was somehow suggestive.

Grisham has not carried his burden as to step one. Thus, the Court need not proceed to step two, reliability. *See Perkins*, 787 F.3d at 1344.

### III. Conclusion

For the reasons stated, I **RECOMMEND** that the motion to suppress [Doc. 74] be **DENIED**. **IT IS SO RECOMMENDED**, this 8th day of September, 2021.

I am aware of no further pretrial or discovery matters to be resolved in this case, and therefore, I hereby **CERTIFY** this case as ready for trial.

SO ORDERED, this 8th day of September, 2021.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE